RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 12a0150p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

ANN I. TAYLOR; ELAINE KLAMERT,

    *Plaintiffs-Appellants/Cross-Appellees*
        *(10-4163/4198),*

ANTHONY S. LOBASSO,
        *Intervenor-Appellant (10-4199),*


        *v.*


KEYCORP; THOMAS C. STEVENS; HENRY L.
MEYERS III; KEYCORP TRUST OVERSIGHT
COMMITTEE; JEFFREY B. WEEDEN; THOMAS
W. BUNN; THOMAS E. HELFRICH; ROBERT L.
MORRIS,
    *Defendants-Appellees /Cross-Appellants*
        *(10-4163/4198),*
    *Defendants-Appellees (10-4199).*

Nos. 10-4163/4198/4199

Appeals from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 1:08-cv-1927—Donald C. Nugent, District Judge.

Argued: April 20, 2012

Decided and Filed: May 25, 2012

Before: NORRIS, CLAY, and GRIFFIN, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Michael J. Klein, STULL, STULL & BRODY, New York, New York, for Appellants. Daniel R. Warren, BAKER & HOSTETLER LLP, Cleveland, Ohio, for Appellees. Thomas Tso, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Amicus Curiae. **ON BRIEF:** Michael J. Klein, Edwin J. Mills, STULL, STULL & BRODY, New York, New York, for Appellants. Daniel R. Warren, Scott C. Holbrook, James A. Slater, David A. Carney, Gretchen L. Lange, BAKER & HOSTETLER LLP, Cleveland, Ohio, for Appellees. Thomas Tso, Nathaniel I. Spiller, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., Paul Blankenstein,

GIBSON, DUNN & CRUTCHER LLP, Washington, D.C., Brian T. Ortelere, Jeremy P. Blumenfeld, MORGAN, LEWIS & BOCKIUS LLP, Philadelphia, Pennsylvania, for Amici Curiae.

———————————

**OPINION**

———————————

GRIFFIN, Circuit Judge. In this ERISA action for breach of fiduciary duty, plaintiff Ann Taylor appeals the district court's dismissal of her complaint for lack of subject-matter jurisdiction. In the event that Taylor's appeal is successful, defendants KeyCorp and numerous individually named fiduciaries (hereinafter referred to as "defendants") cross-appeal the district court's denial of their motion to dismiss. In addition, Anthony S. Lobasso appeals the denial of his motion to intervene. Upon review, we affirm the dismissal of Taylor's complaint for lack of subject-matter jurisdiction and the denial of Lobasso's motion to intervene. We do not address the denial of defendants' motion to dismiss because it is moot.

I.

Taylor filed this action on behalf of herself and a class of similarly-situated participants and beneficiaries of the Keycorp 401(k) Savings Plan (the "Plan") on August 11, 2008. She brought this class action pursuant to §§ 409 and 502 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1109, 1132, against defendants KeyCorp and numerous individually named fiduciaries of the Plan. On January 7, 2009, the district court ordered that Taylor's lawsuit be consolidated with a similar action, and thereafter, Taylor and plaintiff Elaine Klamert filed a consolidated class action complaint. The consolidated complaint defines the proposed class as "[a]ll persons who were participants in or beneficiaries of the Plan whose Plan accounts included investments in KeyCorp common stock . . . at any time between December 31, 2006[,] and the present[.]"

Taylor and Klamert assert five claims. In Count I, plaintiffs allege that defendants breached their fiduciary duties by failing to prudently manage the Plan's

investment in KeyCorp securities.  In Count II, plaintiffs allege that defendants failed to adequately inform participants about the true risk of investing in KeyCorp stock.  In Count III, plaintiffs allege that certain defendants breached their fiduciary duties by failing to adequately monitor the management and administration of Plan assets.  In Count IV, plaintiffs allege that certain defendants failed to avoid impermissible conflicts of interest.  Finally, in Count V, plaintiffs allege that certain defendants are liable for the breaches of fiduciary duty committed by their co-fiduciaries.

Following consolidation, defendants moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  The district court denied the motion.  Thereafter, defendants moved to dismiss for lack of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), arguing that neither Taylor nor Klamert sustained an "actual injury" sufficient to confer Article III standing.  In response, plaintiffs' counsel asserted that Taylor did sustain an injury, forfeiting any argument with regard to Klamert.  Upon review, the district court held that Taylor did not suffer actual injury because she had "benefitted" from the alleged breaches of fiduciary duty, which allowed her to sell the majority of her KeyCorp holdings at an inflated price.  Final judgment was entered on August 12, 2010.

On September 10, 2010, Anthony S. Lobasso moved to intervene as a plaintiff and class representative under Federal Rule of Civil Procedure 24.  Three days later, on September 13, 2010, plaintiffs filed their notice of appeal.  Based upon the district court's entry of final judgment, Lobasso's motion was denied.  Thereafter, defendants filed a cross-appeal challenging the denial of their motion to dismiss, and Lobasso filed an appeal of the denial of his motion to intervene.

II.

We review a district court's dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1) de novo.  *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 324 (6th Cir. 2007).  In considering a Rule 12(b)(1) motion, we may look beyond the jurisdictional allegations in the complaint and consider submitted evidence.

*Id.* at 330.  The plaintiff bears the burden of establishing that jurisdiction exists.  *Nichols v. Muskingum Coll.*, 318 F.3d 674, 677 (6th Cir. 2003).

### III.

"No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies."  *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 37 (1976).  And, an important element of the case-or-controversy requirement is that plaintiff have standing to sue.  *Raines v. Byrd*, 521 U.S. 811, 818 (1997).  In order to establish standing, a plaintiff must allege:  (1) "injury in fact," (2) "a causal connection between the injury and the conduct complained of," and (3) redressability.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotation marks and citations omitted).

To establish an "injury in fact," the plaintiff must be "among the injured."  *Id.* at 563 (internal quotation marks and citation omitted).  Accordingly, the plaintiff must have a "personal stake" in the dispute, alleging an injury "particularized as to him."  *Raines*, 521 U.S. at 819.  Stated more simply, "a plaintiff [must get] something (other than moral satisfaction) *if the plaintiff wins*."  *Drutis v. Rand McNally & Co.*, 499 F.3d 608, 612 (6th Cir. 2007).

### IV.

Taylor asserts that during the class period, defendants breached their fiduciary duties by failing to disclose and/or misrepresenting KeyCorp's inappropriate lending and tax practices.  This, she alleges, caused KeyCorp stock to become unduly risky and artificially inflated.[1]  However, in order to have standing to pursue this lawsuit, Taylor must establish that she was actually injured by defendants' alleged conduct.  This she has failed to do.

---

[1]For purposes of establishing standing, Taylor seeks to recast her complaint as one not alleging artificial inflation.  This attempt is disingenuous at best.  The complaint clearly alleges that KeyCorp stock was artificially inflated.  ("During the Class Period the market price of KeyCorp common stock was artificially inflated due to the concealment of KeyCorp's true financial and operating condition[.]").  Taylor cannot avoid the consequences of this allegation at this juncture.

Taylor's relevant trading history was summarized by the district court as follows:

> [A]s of December 31, 2006, the beginning of the class period, [Taylor] owned 1,678.32 units of the Key stock fund. Ms. Taylor sold all of those units on January 11, 2007, when Key stock was trading at over $37 per share. Key stock reached its peak price of $39.90 per share on February 22, 2007. Following her sale of Key stock in January, 2007, Ms. Taylor never purchased another unit in the Key stock fund. She did acquire an additional 387.31 units in Key stock through Key's matching program. On February 22, 2008, she sold 268.01 of those units and sold the remainder of her 119.30 units of Key stock fund on June 25, 2008. Overall, Ms. Taylor sold her Key stock for more money than she actually paid for it, earning a net profit of $6,317.

This trading history reveals that Taylor sold over 80% of her KeyCorp holdings at a time she claims the stock was artificially inflated. Accordingly, if the allegations in the complaint are true, Taylor sold the majority of her KeyCorp holdings for *more money* than it was worth, thereby *benefitting* from defendants' alleged breach of fiduciary duty.

Under similar circumstances, several courts have found plaintiffs to be without Article III standing, holding that plaintiffs suffer no "actual injury" when they benefit from alleged artificial inflation. *See Brown v. Medtronic, Inc.*, 628 F.3d 451, 455-59 (8th Cir. 2010); *In re Bos. Scientific Corp. ERISA Litig.*, 254 F.R.D. 24, 30-32 (D. Mass. 2008); *Vermeylen v. ProQuest Co.*, No. 06-12327, 2007 WL 1218713, at *5 (E.D. Mich. Apr. 23, 2007). Such a finding is based on common sense.

> If . . . [the] stock was artificially inflated, then any Plan participants who purchased company stock during the period of inflation overpaid for the stock units and would have a claim to benefits equal to the amount overpaid. A Plan participant who *sold* company stock during that same period, on the other hand, received "too much" for the units and benefitted [from] the inflation accordingly.

*In re Boston Scientific*, 254 F.R.D. at 31 (footnote omitted).[2]

---

[2]Similarly, several courts have found plaintiffs to be without Article III standing when the alleged breaches of fiduciary duty resulted in no economic harm. *See Harley v. Minn. Mining & Mfg. Co.*, 284 F.3d 901, 906-07 (8th Cir. 2002) (holding that an ERISA plaintiff lacked standing because the plan portfolio had a surplus and thus did not experience actual injury); *Piazza v. EBSCO Indus., Inc.*, 273 F.3d 1341, 1354 (11th Cir. 2001) (holding that plaintiff lacked Article III standing when the alleged breach of fiduciary duty "if anything, increased his retirement distributions").

Supreme Court precedent also supports this rationale. In *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005), the Court held that "an inflated purchase price will not itself constitute . . . economic loss." *Id.* at 342. Rather, stock must be purchased at an inflated price and sold at a loss for an economic injury to occur. *Id.* This reasoning was described by the Court as "pure logic," and while *Dura* was decided in the securities-fraud context, its common-sense analysis is equally applicable here.[3]

Taylor disputes that out-of-pocket loss is an appropriate measure of her injury, suggesting that we use an alternative-investment theory. Specifically, Taylor claims that she would have made more money on her investments if her holdings had been transferred away from KeyCorp stock and placed in the S&P 500 index. We hold that such a measure of damages is not appropriate in this case.

When a plaintiff alleges that the withholding of information affected share prices, "the appropriate measure of damages [is] the difference between the investment as taken and the investment as it would have been if not tainted by withheld information." *Brown*, 628 F.3d at 458. But damages based upon an entirely different investment vehicle, such as the S&P 500, are not fairly "traceable" to the defendants' breach. *Id.* Indeed, to allow plaintiffs the benefit of an alternative, more lucrative investment, would not advance the policies underlying ERISA. *See Benefits Comm. of Saint-Gobain Corp. v. Key Trust Co. of Ohio, N.A.*, 313 F.3d 919, 932 (6th Cir. 2002) ("The purpose of the[] ERISA safeguards was not to obtain windfalls for the participants but [to] ensure that the rights promised by a company were fulfilled.").

In advocating for an alternative-investment measure of loss, Taylor relies on several cases providing that plaintiffs are "entitled to a remedy which will put [them] in the position in which [they] would have been if the trustee had not committed the

---

[3]Taylor contends that there is a difference between "actual injury" for purposes of Article III standing and damages. We agree. However, "[i]n most cases . . . a plaintiff's standing tracks [her] cause of action. That is, the question whether [s]he has a cognizable injury sufficient to confer standing is closely bound up with the question of whether and how the law will grant [her] relief." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 591 (8th Cir. 2009). Here, where Taylor derived a *benefit* from defendants' alleged breaches of fiduciary duty, we do not see how she can allege any form of "actual injury."

breach."**4**   *Warren v. Soc'y Nat'l Bank*, 905 F.2d 975, 979 (6th Cir. 1990) (internal quotation marks and citation omitted), *abrogated on other grounds*; *see also Boland v. Chrysler Corp.*, 933 F.2d 1007, 1991 WL 85297, at *2 (6th Cir. 1991) (per curiam) (unpublished table decision) ("[O]ther damages may be recoverable if necessary to place the beneficiary in the same position he would have been in had the fiduciary not breached his duties."). However, Taylor would have made *less money* on her KeyCorp investments if defendants had not committed their alleged violations of ERISA. In addition, Taylor relies on a few out-of-circuit cases that expressly adopt an alternative-investment damages calculation. *See Evans v. Akers*, 534 F.3d 65, 74 (1st Cir. 2008); *Donovan v. Bierwirth*, 754 F.2d 1049, 1056 (2d Cir. 1985). But these cases do not involve claims of artificial inflation from which the plaintiff ultimately benefitted. Indeed, while *Donovan* adopted an alternative-investment theory for some ERISA claims, it expressly noted that out-of-pocket loss is the correct measure of damages when information is improperly withheld, resulting in artificial inflation. 754 F.2d at 1054-55 ("In such cases, it may well be that the best measure of damages is one that awards the plaintiff the difference between what was paid for the stock, and what would have been paid had the plaintiff been aware of the concealed information."). Accordingly, Taylor cannot establish actual injury through an alternative-investment theory.

V.

Taylor and the Department of Labor (as amicus curiae) assert that, even if the correct measure of her injury is out-of-pocket loss, Taylor has still established "actual injury" sufficient to confer Article III standing because she suffered a loss on the KeyCorp stock she obtained through KeyCorp's matching program. Specifically, they argue that, even if Taylor benefitted from the alleged artificial inflation with regard to her January 2007 sale, the shares she obtained thereafter were purchased at an inflated price and sold at a loss. The question is, then, whether Taylor's gains and losses during

---

**4**In asserting entitlement to an alternative-investment measure of loss, Taylor also relies on a footnote in *LaRue v. DeWolf, Boberg & Associates, Inc.*, 552 U.S. 248 (2008), which states that ERISA plaintiffs are entitled to "lost profits." *Id.* at 253 n.4. *LaRue*, however, did not involve a claim of artificial inflation where the plaintiff actually benefitted from the alleged breach of fiduciary duty.

the class period must be netted to determine whether she suffered actual injury.  We hold that netting is required in this case.

The fiduciary duties outlined in ERISA draw upon the common law of trusts. *See Varity Corp. v. Howe*, 516 U.S. 489, 496 (1996).  This common law supports the netting of gains and losses stemming from a single breach of fiduciary duty. Restatement (Second) of Trusts § 213 ("A trustee who is liable for a loss occasioned by one breach of trust cannot reduce the amount of his liability by deducting the amount of a gain which has accrued through another and distinct breach of trust; but if the two breaches of trust are not distinct, the trustee is accountable only for the net gain or chargeable only with the net loss resulting therefrom."); *see also id.* cmts. f, h.  Indeed, other courts adopting an out-of-pocket measure of loss have netted the plaintiff's gains and losses stemming from one indivisible breach of fiduciary duty.  *Brown*, 628 F.3d at 455 ("[W]e agree with the district court that, at a minimum, a plaintiff must allege a net loss in investment value that is fairly traceable to the defendants' challenged actions."); *In re Bos. Scientific*, 254 F.R.D. at 31 ("Even assuming that the units [plaintiffs] purchased during the Class Period were negatively affected by Boston Scientific's failure to disclose, any loss by those shares was more than made up for by the artificially high return on their investment in units purchased before the Class Period began.").

Here, Taylor asserts that defendants beached their fiduciary duties by concealing KeyCorp's "true financial and operating condition," rendering KeyCorp stock an imprudent investment throughout the class period.  She does not allege separate breaches causing separate damages.  Accordingly, all gains and losses during the class period, attributable to one course of conduct, should be netted.[5]  When such netting is done, it

---

[5]Taylor further asserts that even if the correct measure of actual injury is out-of-pocket losses, and even if her gains and losses are netted, there is a question of fact regarding whether her gains in the beginning of the class period were greater than her losses at the end of the class period.  This argument, however, was not placed before the district court and is therefore forfeited.  *See Blue Cross & Blue Shield Mut. of Ohio v. Blue Cross & Blue Shield Ass'n*, 110 F.3d 318, 335 (6th Cir. 1997); *United States ex rel. Ramseyer v. Century Healthcare Corp.*, 90 F.3d 1514, 1518 n.2 (10th Cir. 1996) ("Our duty to consider unargued *obstacles* to subject matter jurisdiction does not affect our discretion to decline to consider waived arguments that might have *supported* such jurisdiction.").

is clear that Taylor has suffered no actual injury.  Accordingly, Taylor does not have standing to pursue this lawsuit.[6]

VI.

On September 10, 2010, Lobasso moved to intervene as a plaintiff and class representative.  Three days later, Taylor filed her notice of appeal.  The district court thereafter denied Lobasso's motion to intervene, holding that because the underlying action was terminated, the motion was untimely.

"We may affirm the district court's judgment on any ground supported by the record, including on a basis not mentioned in the district court's opinion."  *Westfield v. Fed. Republic of Ger.*, 633 F.3d 409, 413 (6th Cir. 2011).  In this case, the district court was correct to deny the motion to intervene, not because final judgment had been entered, but because once a notice of appeal was filed, the district court was divested of jurisdiction.[7]

"The filing of a notice of appeal is an event of jurisdictional significance–it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal."  *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982); *see also United States v. Garcia-Robles*, 562 F.3d 763, 767-68 (6th Cir. 2009).  Accordingly, we have held that a notice of appeal divests the district court of jurisdiction to resolve a motion to intervene filed after a notice of

---

[6]The Department of Labor asserts that Taylor has standing to pursue her claims, even in the absence of injury, simply because defendants breached duties owed to her pursuant to ERISA.  This argument, however, was not raised by the parties in their appellate briefs.  Accordingly, we will not consider this issue. *Cellnet Commc'ns, Inc. v. FCC*, 149 F.3d 429, 443 (6th Cir. 1998) ("While an amicus may offer assistance in resolving issues properly before a court, it may not raise additional issues or arguments not raised by the parties.").

[7]Entry of final judgment, alone, is not a basis upon which to deny a motion to intervene.  *See United Airlines, Inc. v. McDonald*, 432 U.S. 385, 394-96 (1977) (holding that a motion to intervene, filed after final judgment, should have been granted).

appeal. *Bowling v. Pfizer, Inc.*, 14 F.3d 600, 1993 WL 533620, at *1 (6th Cir. 1993) (unpublished table decision).[8]

Lobasso argues that, unlike *Bowling*, the motion to intervene in this case was filed *before* the notice of appeal, thereby allowing the court to consider the motion. In addressing this question of first impression, we find the reasoning of *Roe v. Town of Highland*, 909 F.2d 1097 (7th Cir. 1990), to be persuasive. In *Roe*, a proposed intervenor filed a motion to intervene on the same day a notice of appeal was filed. *Id.* at 1098. Acknowledging that a timely post-judgment motion to intervene may not always be resolved before a notice of appeal is due[9], the Seventh Circuit noted that one seeking to intervene is not without recourse. She "can file an emergency motion with the district court detailing the need for a ruling so that a timely appeal may be taken. [Or], the district court may enlarge the time for filing an appeal," as set forth in Federal Rule of Appellate Procedure 4(a)(5). *Id.* at 1099. Accordingly, the *Roe* court found that the district court's denial of the motion to intervene was appropriate. *Id.* at 1100; *see also Drywall Tapers & Pointers of Greater New York, Local Union 1974 of I.U.P.A.T., AFL-CIO v. Nastasi & Assocs. Inc.*, 488 F.3d 88, 94 (2d Cir. 2007) (affirming denial of motion to intervene for lack of jurisdiction when intervention motion was not ruled upon before the filing of a notice of appeal); *Nicol v. Gulf Fleet Supply Vessels, Inc.*, 743 F.2d 298, 298-99 (5th Cir. 1984) (same).[10]

In this case, Lobasso did not file an emergency motion, nor did his counsel (the same counsel representing Taylor) request additional time in which to file a notice of appeal. In addition, there is nothing in the record indicating why Lobasso waited until

---

[8] Following the filing of a notice to appeal, the district court does retain jurisdiction to enforce the judgment, *City of Cookeville, Tenn. v. Upper Cumberland Elec. Membership Corp.*, 484 F.3d 380, 394 (6th Cir. 2007), or proceed with matters that are in aid of the appeal. *Inland Bulk Transfer Co. v. Cummins Engine Co.*, 332 F.3d 1007, 1013 (6th Cir. 2003). Such enforcement or aid, however, is not what Lobasso requested in moving to intervene.

[9] Following entry of final judgment, the parties have 30 days in which to file a notice of appeal. Fed. R. App. P. 4(a)(1)(A).

[10] Lobasso asserts that the district court had discretion to retain jurisdiction over pending motions, citing *Dixon v. Clem*, 492 F.3d 665 (6th Cir. 2007). The holding of *Dixon*, however, applies only to motions listed in Federal Rule of Appellate Procedure 4(a)(4), which a motion to intervene is not. *Id.* at 679.

September 2010 to intervene.  Once the Rule 12(b)(1) motion was filed, Lobasso was on notice that Taylor may not be an adequate class representative.  Therefore, a precautionary motion to intervene could have been filed.

Lobasso relies on a handful of cases that allowed a motion to intervene to be decided after final judgment was entered.  However, in most of these cases, no notice of appeal was filed to divest the district court of jurisdiction.  *See United Airlines, Inc. v. McDonald*, 432 U.S. 385 (1977) (allowing post-judgment intervention for purposes of appeal); *Linton ex rel Arnold v. Comm'r of Health & Env't, State of Tenn.*, 973 F.2d 1311 (6th Cir. 1992) (same).[11]  Moreover, in *Triax Co. v. TRW, Inc.*, 724 F.2d 1224 (6th Cir. 1984), the issue of subject-matter jurisdiction was never addressed.  Accordingly, *Triax* has no precedential effect.  *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 312 (2008).

In the case at bar, the district court was not given sufficient opportunity to address the motion to intervene prior to the filing of the notice of appeal.  Once such notice was filed, the district court was without jurisdiction to address the motion.  Accordingly, the district court did not err in denying Lobasso's motion to intervene.[12]

VII.

For the foregoing reasons, we affirm the district court's order dismissing Taylor's complaint for lack of subject-matter jurisdiction.  In addition, we affirm the denial of Lobasso's motion to intervene.  We decline to address all other issues on appeal as moot.

---

[11]The Third Circuit has held a district court to have jurisdiction to consider a motion to intervene after a notice of appeal is filed.  *Halderman v. Pennhurst State Sch. & Hosp.*, 612 F.2d 131, 134 (3d Cir. 1979).  This holding, however, was based upon an erroneous interpretation of *McDonald*, as noted by the Fifth Circuit in *Avoyelles Sportsmen's League, Inc. v. Marsh*, 715 F.2d 897, 928-29 (5th Cir. 1983).

[12]While the district court did not have jurisdiction to address the motion to intervene, this court may, in its discretion, remand the matter back to the district court to address the motion.  *Roe*, 909 F.2d 1099-1100.  However, because Lobasso failed to give the district court sufficient time to address the motion, and because he failed to take any reasonable action to allow for the district court's consideration, we decline to remand.